DEVIN DERHAM-BURK, #104353
CHAPTER 13 STANDING TRUSTEE
DEVIN L. PACE #256514
NANETTE DUMAS #148261
JANE Z. BOHRER #243692
P.O. BOX 50013
SAN JOSE, CA 95150-0013

TELEPHONE: (408) 354-4413
FACSIMILE: (408) 354-5513

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA - DIVISION 5

| | |
|---|---|
| IN RE:<br><br>ROBERT LOUIS BROOKS and<br>DIANE CARMEN BROOKS,<br><br><br>Debtors. | CHAPTER 13 CASE NO. 11-51864 MEH<br><br>TRUSTEE'S OBJECTION TO AND REQUEST FOR HEARING ON DEBTORS' MOTION TO MODIFY CHAPTER 13 PLAN<br><br>Date: None Set<br>Time: None Set<br>Judge: Hon. M. Elaine Hammond |

Devin Derham-Burk, the Chapter 13 Standing Trustee ("Trustee"), submits the following objection to Debtors' Motion to Modify Chapter 13 Plan ('Modification Motion") [Docket #53] and requests a hearing thereon. In their Modification Motion, Debtors ask to change the election in their confirmed plan that re-vested property of the estate in Debtors upon confirmation. Debtors want to elect the "other option" -- one that delays the re-vesting until the time of discharge or dismissal. Debtors are requesting the modification because Debtors anticipate filing a motion to value and avoid the lien securing a second deed of trust that encumbers their home,

and the Court has indicated that it cannot grant the lien avoidance motion if Debtors' home is no longer property of their bankruptcy estate.

Debtors' Modification Motion must be denied. As explained further below, changing the property vesting election in a confirmed chapter 13 plan is not authorized under the Bankruptcy Code. Further, even if it were allowed, there is no evidence before this Court to demonstrate that a change in the vesting effect of Debtors' plan is warranted under the circumstances. Finally, the requested vesting change is unnecessary because the estate retains an interest in the property as needed to effectuate the terms of Debtors' plan. In support of her position, the Trustee submits her own declaration and states as follows:

**Factual Background**

On February 28, 2011, debtors Robert and Diane Brooks ("Debtors") filed a chapter 13 petition through their counsel, Henry G. Rendler. [Docket #1]. When they filed for bankruptcy protection, Debtors owned a home located at 2735 Hayloft Way, Morgan Hill, California 95037 ("Property"). [Docket #14 at p. 3]. On Schedule A, Debtors listed a petition date value for the Property of $526,500. *Id*. The Property is encumbered by two deeds of trust. According to their Schedules, on the petition date, Debtors owed Wells Fargo Home Mortgage ("Wells Fargo") $574,229.17 pursuant to a note that is secured by a first deed of trust against the Property. Debtors further scheduled a second deed of trust, also in favor of Wells Fargo, securing debt in the amount of $159,869.23. *Id*. at pp. 10-11. The scheduled amount of debt secured by the first deed of trust is consistent with the corresponding proof of claim on file. *See* Claims Register at Claim No. 18-1. The proof of claim related to the debt secured by the second deed of trust

against the Property ("Wells Fargo Claim") reflects debt of $160,750.76, slightly more than the scheduled amount. *Id*. at Claim No. 7-1.

Debtors also filed a proposed plan of reorganization ("Plan") on the petition date.[1] [Docket #8]. After the Trustee's objections to confirmation were resolved, the Court confirmed the Plan on June 28, 2011. [Docket #28]. Several sections of the Plan are relevant to the Court's consideration of the Modification Motion. First, § 2(d) of Debtors' confirmed Plan, provides for a zero percent distribution to Debtors' general unsecured creditors. [Docket #8]. The Plan further provides, at § 4, that Debtors are to pay directly on-going monthly payments of $3,142.07 to Wells Fargo as a fully secured creditor holding long-term debt. *Id*. However, the Plan separately treats Wells Fargo's claim that is associated with the second deed of trust. Section 7 of the Plan expressly states that

> Debtors shall file a motion to avoid the second trust deed of Wells Fargo Home Mortgage, on the basis that said trust deed is wholly unsecured. The claim of said creditor shall be treated as a wholly-unsecured, non-priority claim, to be paid pursuant to the provisions of Paragraph 2(d).

*Id*. Finally, the Plan states that Debtors elect to have property of the estate re-vest in Debtors upon confirmation of the Plan. *Id*.

For over four years, Debtors have regularly made their $975 monthly Plan payments to the Trustee. *See* Declaration of Devin Derham-Burk ("Trustee Decl.") at ¶ 6. With their last payment in July 2015, the Trustee received sufficient funds to pay, and she has paid, all the presently allowed claims pursuant to the terms of the Plan.[2] *Id*. In accordance with the express

---

[1] Debtors filed two versions of their Plan on the petition date. [Docket #2 and #8]. The two plans are identical, except for the estimated term of the Plan set forth in § 2(d). It appears that Debtors initially filed a Plan that inadvertently reflected an estimated term of 0 months when a 60 month term was intended. The second filing of the Plan corrected that error. The Trustee will only cite to the corrected version that appears as Docket entry #8.

[2] The Trustee notes, however, that Debtors have not yet completed their Plan. Debtors' counsel filed a supplemental fee application on September 20, 2015. [Docket #51]. Upon approval of the requested fees, Debtors will need to make further plan payments to satisfy that administrative claim. Trustee Decl. at ¶ 7.

BROOKS 11-51864 MEH        OBJ. TO DEBTORS' MOTION TO MODIFY PLAN Page 3 of 17

terms of the Plan, the Trustee treated Wells Fargo's claim associated with the second deed of trust as a general unsecured claim and paid it nothing as provided in § 2(d). *Id*. at ¶¶ 9 and 11. It has been fifty-six months since Debtors' first payment came due, and Debtors are on the verge of successfully completing their Plan. *Id*. at ¶ 8.

On July 20, 2015, about four years post-confirmation, Debtors filed their motion to value and avoid the lien associated with the Well Fargo Claim as is provided in § 7 of their Plan. Although no other party opposed the motion to value, the Court instructed Debtors to set it for hearing. At hearing, the Court expressed concern that the Property is no longer property of the estate, and therefore, the Court can no longer grant the relief requested in the motion to value. The Court noted that Debtors may or may not be able to re-vest the Property in their estate by way of a motion to modify their Plan. In light of the Court's concerns, Debtors withdrew their motion to value lien.

On September 23, 2015, Debtors filed the instant Modification Motion, which asks to change the property vesting election that they made in § 6 of the Plan. Debtors want to switch to the option that provides: "Debtors elect to have property of the estate revest in the debtors at such time as a discharge is granted or the case is dismissed." The Modification Motion explains that Debtors seek the modification so they can "proceed with the provisions of the plan calling for the Debtors to file a lien avoidance motion with respect to the second trust deed on their home." [Docket # 53]. All other provisions of the Plan are to remain in full force and effect with no further changes.

**Legal Analysis**

Bankruptcy Code § 1329 controls, and places several restrictions on, the modification of confirmed chapter 13 plans. For example, even though debtors, trustees and unsecured creditors have the right to request post-confirmation plan modifications, relief must be requested before completion of the confirmed plan. 11 U.S.C. § 1329(a). Additionally, the modifications permitted under § 1329 are limited to those that: 1) increase or reduce the amount of payments on claims of a particular class; 2) extend or reduce the time for such payments; 3) alter the amount of the distribution to a creditor whose claim is provided for by the plan to account for payments on the claim outside of the plan; or, 4) reduce amounts to be paid under the plan by actual amounts expended by the debtor for the purchase of health insurance, if certain additional criteria are satisfied. 11 U.S.C. §§ 1329(a)(1)-(4); *Powers v. Savage (In re Powers)*, 202 B.R. 618, 622 (B.A.P. 9th Cir. 1996); *In re Pasley*, 507 B.R. 312, 319 (Bankr. E.D. Cal. 2014).

Section 1329(b)(1) further requires that proposed post-confirmation modifications satisfy many of the same standards that govern the initial confirmation of a chapter 13 plan. *See* 11 U.S.C. § 1329(b)(1) (providing that §§ 1322(a), 1322(b) and 1323(c), as well as the requirements of § 1325(a) apply to post-confirmation plan modifications); *Mattson v. Howe (In re Mattson)*, 468 B.R. 361, 367 (B.A.P. 9th Cir. 2012)(when a proposed modification falls within the parameters of § 1329(a), the court "must then decide whether the proposed modification complies with § 1329(b)(1)"). Finally, even when the statutory requirements are satisfied, every post-confirmation plan modification remains subject to the sound discretion of the court reviewing the motion to modify. *Powers*, 202 B.R. at 622.

The party proposing a modification bears the burden of demonstrating that the type of modification requested is permissible, that all other statutory requirements are satisfied and that

the modification is warranted as a matter of discretion. *Mattson*, 468 B.R. at 371-72; *In re Morris*, 2012 WL 2341537, at *4 (Bankr. S.D. Cal. Jun. 7, 2012); *In re Hobbs*, 2012 WL 1681981, at *2 (Bankr. C.D. Cal. May 7, 2012). Here, Debtors, have failed to satisfy that burden. As a result, the Modification Motion must be denied.

1. **<u>Section 1329 Does Not Authorize Modifications to Change the Vesting Effect of Confirmation</u>.**

Pursuant to § 1327(b) of the Bankruptcy Code and § 6 of Debtors' Plan, confirmation of the Plan had the effect of vesting the property of Debtors' bankruptcy estate back in the Debtors, except to the extent that the Plan or the order confirming the Plan provided otherwise. Now, without citation to any legal authority, Debtors ask to delay that vesting effect until such time as they receive a discharge or their case is dismissed. The Bankruptcy Code does not permit the requested modification.

Debtors' failure to provide legal support for the Modification Motion is not surprising because courts within the Ninth Circuit consistently have recognized that § 1329(a) delineates just four types of permissible post-confirmation modifications.[3] *Mattson*, 468 B.R. at 367; *Powers*, 202 B.R. at 622 (stating that § 1329(a) "limits the kinds of modifications that can be proposed"); *Pasley*, 507 B.R. at 319; *Hobbs*, 2012 WL 1681981, at *2. Other courts have agreed that the *only* post-confirmation modifications that are permitted are those listed in § 1329(a). *See, e.g.*, *In re Barbosa*, 235 F.3d 31, 39-40 (1st Cir, 2000)(acknowledging that modifications to confirmed plans are only allowed in the limited circumstances provided in § 1329(a)); *In re Witkowski*, 16 F.3d 739, 745 (7th Cir. 1994); *In re Wills*, 2014 WL 2442275, at *3 (Bankr. C.D. Ill. May 30, 2014)(modification "may only be sought for one of the limited purposes enumerated in § 1329(a)"); *Morris*, 2012 WL 2341537, at *4.

---

[3] The four categories are listed above at p. 5 and at 11 U.S.C. § 1329(a)(1)-(4).

The fact that § 1329(a) operates to limit the available grounds for plan modifications makes sense because post-confirmation modifications are a statutory exception to the *res judicata* effect of confirmed plans. 11 U.S.C. § 1327(a); *Max Recovery, Inc. v. Than (In re Than)*, 215 B.R. 430, 435 (B.A.P. 9th Cir. 1997); *Powers*, 202 B.R. at 621-22, *agreeing with*, *In re Witkowski*, 16 F.3d 739, 744-45 (7th Cir. 1994). *Accord*, *Mattson*, 468 B.R. at 369. Without boundaries on the ability to modify, the binding effect of confirmation could easily be evaded, and § 1327(a) would quickly become meaningless.

Significantly, each of the four statutory grounds for modification relates to changing the amount or timing of payments to be made to a debtor's creditors. 11 U.S.C. § 1329(a)(1)-(4). Typically, a proposed modification would be supported by some corresponding change in the debtor's financial picture: increases or reductions in income or expenses, fewer or greater than expected claims filed, payments on claims outside the plan, etc. A post-confirmation change to a plan's vesting effect, however, has nothing to do with changing the timing or amount of payments to creditors as § 1329(a) allows.[4]

As the Ninth Circuit has recognized, the term "vest" commonly means "'[t]o confer ownership (of property) upon a person' and '[t]o invest (a person) with the full title to property.'" *In re Jones*, 657 F.3d 921, 928 (9th Cir. 2011)(quoting Black's Law Dictionary). As one bankruptcy court recently explained, when property of the estate re-vests in a debtor, the debtor gets something more than possession. From the time of re-vesting, the debtor enjoys

---

[4] This distinguishes the modification requested here from the line of cases that permit post-confirmation modifications to reduce payments to a secured creditor by surrendering collateral and treating any deficiency as unsecured debt. In the surrender cases, the requested modification changes the amount paid to a specific secured creditor. However, because secured claims are separately classified, the modified treatment reduces "the amount of payment on the claims of a particular class" thereby bringing it within § 1329(a)(1). Here, the requested change in vesting will not change the amount or timing of any payments to any creditor, much less a class of creditors. The Trustee has already treated Wells Fargo's claim as a general unsecured claim and has paid it pursuant to the Plan.

BROOKS 11-51864 MEH  OBJ. TO DEBTORS' MOTION TO MODIFY PLAN Page 7 of 17

absolute ownership and control of the property. *In re Golden*, 528 B.R. 803, 806-07 (Bankr. D. Colo. 2015). Thus, any modification of a confirmed plan's vesting effect necessarily amounts to a transfer of property ownership as between a debtor and the debtor's bankruptcy estate, together with all rights, obligations and protections that are associated with that property ownership. This is far beyond the type of modifications that § 1329(a) permits.

The statutory limitations on the available grounds for modification underscore the fact that some plan provisions are so integral to the bargain between debtors and creditors that those terms, once set, cannot and should not be changed midstream. Vesting, by establishing property ownership rights, is exactly that kind of fundamental plan provision. A debtor's vesting choice has significant consequences for both the debtor and creditors that resonate throughout the post-confirmation proceedings. For example, vesting directly affects the operation of the automatic stay, which protects property of the estate, but not property that has left the estate and vested in the debtor. 11 U.S.C. § 362(c)(1). Under § 362(b)(9)(D), certain post-petition tax liens can attach to property that has re-vested in a debtor. Additionally, when property of the estate vests in the debtor upon plan confirmation, it does so free and clear of any claim or interest of any creditor provided for by the plan. 11 U.S.C. § 1327(c). Whether property vests in a debtor at confirmation also affects post-confirmation administrative expenses that are tied to the actual and necessary costs of preserving the estate. 11 U.S.C. § 503(b)(1). Finally, a debtor's vesting choice may also affect the post-confirmation sale of a debtor's assets. If property remains in the estate following confirmation, the debtor must request court permission to sell those assets, 11 U.S.C. § 363, and any appreciation in the value of the asset will belong to the estate. By contrast, if property vests in the debtor at confirmation, the debtor is free to sell that property

without court involvement and the debtor may be entitled to any appreciation realized from the sale.

In light of the importance of a plan's vesting election, it is not surprising that changes to that election have not been authorized. If the vesting effect of a confirmed plan could be modified, a myriad of questions would arise, and the potential for uncertainty, confusion and manipulation would be undeniable. Just a few of the questions include:

> After property has vested in a debtor, does any estate continue to exist – in other words, is there an estate to which the property could be returned?

> When does a requested change in a plan's vesting effect become effective - at the time that the modified plan becomes effective or nunc pro tunc to the original confirmation date? What happens with respect to intervening stay relief orders, sales, foreclosures or liens?

> Does the automatic stay "spring back" to protect property that vested in a debtor at confirmation but is subsequently returned to the estate?

> What property is subject to a change in a plan's vesting effect – does property of the estate move as a whole or can a single piece of property be transferred in or out of the estate? What if any limits exist on how often property can be transferred in or out of the estate?

> Who can request modification of a plan's vesting effect – can a trustee or an unsecured creditor re-vest property in the estate and take advantage of appreciation in value?

These questions and others demonstrate that modification of a plan to change its vesting effect is far different than the type of allowable modification that changes the amount or timing of payments that creditors will receive. The questions further attest to the uncertainty and the potential for manipulation that could result if a debtor can change his or her vesting choice. Debtors could easily delay vesting so as to reap the benefits of the automatic stay, knowing that they can change their election just before any sale and snatch the benefits of any appreciation away from their creditors.

Changes in a plan's vesting election are not within the parameters of § 1329(a) and are not otherwise permitted under the statute. On this basis alone, the Modification Motion must be denied.

**2. There is No Evidence that the Plan, as Modified, Satisfies the Liquidation Test.**

Even if Debtors' proposed modification survived analysis under § 1329(a), Debtors have not provided any evidence demonstrating that their modified plan satisfies § 1329(b)(1). In part, § 1329(b)(1) makes the confirmation requirements of § 1325(a) applicable to post-confirmation plan modifications. This means, among others things, that every modified plan must satisfy the "liquidation value test." In other words, the Debtors' proposed modified plan must provide Debtors' general unsecured creditors with at least as much as they would receive if Debtors' estate were liquidated on the effective date of the plan. 11 U.S.C. at § 1325(a)(4).

For purposes of modifying a confirmed plan, the vast majority[5] of courts have determined that the liquidation value test must be recalculated as of the effective date of the *modified* plan. In other words, the liquidation analysis used at confirmation of the original plan is not controlling. Instead, the liquidation value of property of the estate is recalculated at the time of modification, thereby capturing post-petition appreciation through the effective date of the modified plan. *In re Barbosa*, 236 B.R. 540, 552-54 (Bankr. D. Mass. 1999), *affd*, *Barbosa v. Solomon*, 235 F.3d 31 (1st Cir. 2000); *In re Davenport*, 2011 WL 6098068, at *3 (Bankr. D. Kan. Dec. 7, 2011)(court granted trustee's motion to amend plan and require debtors to turnover

---

[5] The trustee recognizes that there is at least one decision holding that the original liquidation analysis controls for purposes of post-confirmation plan modifications. *See Forbes v. Forbes (In re Forbes)*, 215 B.R, 183 (B.A.P. 8th Cir. 1997)(there is only one plan and one effective date, therefore, for purposes of § 1325(a)(4), the liquidation "value as of the effective date plan" necessarily refers to the effective date of the initially confirmed plan). The Trustee believes that the more recent *Barbosa* case and its progeny, discussed herein, provide a more reasoned analysis. *Forbes* is inconsistent with § 1329(b)(2), which contemplates replacement of the original plan with the modified plan by providing that "the plan as modified becomes the plan." *Forbes* also is at odds with the legislative history of § 1329.

BROOKS 11-51864 MEH  OBJ. TO DEBTORS' MOTION TO MODIFY PLAN Page 10 of 17

proceeds of appreciated real property for payment to unsecured creditors); *In re Merritt*, 344 B.R. 785, 787 (Bankr. N.D. W. Va. 2006)(after debtor's real property sold for $100,000 more than its scheduled value, court denied debtors' motion to compel return of all funds in excess of amount needed to pay off original plan, and instead, ordered full payment of general unsecured creditors); *In re Morgan*, 299 B.R. 118, 123-25 (Bankr. D. Md. 2003)(noting split of authority but concluding that liquidation analysis should be done as of the date of modification); *In re Walker*, 153 B.R. 565, 568 (Bankr. D. Or. 1993) (in applying § 1325(a)(4) to confirmation of a modified plan, the liquidation value test should be applied as of the effective date of the modified plan).

The legislative history regarding § 1329(b) also supports the recalculation of the liquidation value test when a plan is modified post-confirmation. As the *Walker* court pointed out, the House Reports specifically explained,

> In applying the standards of proposed 11 U.S.C. 1325(a)(4) to the confirmation of a modified plan, "the Plan" as used in the section will be the plan as modified under this section . . . . Thus, the application of *the liquidation value test must be redetermined at the time of the confirmation of the modified plan*.

*Walker*, 153 B.R. at 568, *quoting*, H.R. Rep. No. 595, 95th Conf., 1st Sess. 431 (1977), U.S. Code Cong. & Admin. News pp. 5787, 6386 and 6387 (emphasis added). *Accord*, *In re Nott*, 269 B.R. 250, 255 (M.D. Fla. 2000)(quoting the same passage). Additionally, Judge Lundin in his chapter 13 treatise looked to the language of the Bankrutpcy Code to conclude that

> Defining the effective date of the plan at modification as the effective date of the modified plan respects the language in § 1329(b)(2) that substitutes the modified plan for the plan as originally confirmed. This interpretation recognizes that the passage of time between confirmation and modification changes the facts of a Chapter 13 case.

Applying the above principles to this case, Debtors have not provided the evidence needed to demonstrate that their proposed modified plan would pass the recalculated liquidation

value test required by § 1329(b)(1). Assuming Debtors are able to change their vesting election and re-establish their bankruptcy estate and all of its property, they must first offer some evidence regarding the current value of all estate property that would allow the Trustee to perform a proper liquidation analysis. Even if Debtors only want to return the Property subject to the Wells Fargo Claim to their bankruptcy estate (rather than modify their entire vesting election), they have not provided any evidence of the current value of the Property. As a result, even if their Modification Motion requested a change permitted under § 1329(a), Debtors have failed to establish that their requested modification passes muster under § 1329(b). Again, the Modification Motion should be denied.

### 3. The Modification Will Not Serve Any Achievable Goal.

If Debtors are permitted to modify the vesting election of their confirmed plan to "re-vest" their former "property of the estate" back into their bankruptcy estate, the Property subject to Wells Fargo's lien will return to the estate at its current market value (as discussed above). It makes sense then for the same current market value to be used with respect to any subsequent motion to value collateral and avoid lien.

Although Debtors have not yet provided any evidence of the Property's current value, the Trustee's preliminary investigation via on-line appraisal services indicates that the Property has appreciated substantially and is now worth approximately $746,000. *See* Trustee Decl. at ¶ 13. Based on that estimate, the Wells Fargo Claim may no longer be wholly unsecured. According to claims filed, the total debt secured by the Property is only $734,979.93, less than the Property's current value. As a result, even if the Plan is modified to re-vest the Property in the estate, Debtors will not be able to avoid Wells Fargo's lien as they hope and the proposed

modification will serve no purpose. Under these circumstances, even if the Code permitted the proposed modification, the Court should exercise its discretion to deny the Modification Motion.

### 4. **Because the Estate Retains an Interest in the Property, There Is No Need to Decide Whether Debtors Can Modify Their Vesting Election.**

The Court has stated that § 506(a) of the Bankruptcy Code limits the Court's ability to value liens to those liens that affect the "estate's interest" in the property subject to the lien. Based on Debtors' election of the "early vesting" option in their Plan, the Court has concluded that it can no longer value and avoid Wells Fargo's junior lien against the Property. For the reasons explained below, the Trustee believes that the specific facts of this case demonstrate that the interest of Debtors' bankruptcy estate in the Property has never been eliminated. As a result, the Court continues to have the ability to value the Property securing the Wells Fargo Claim without modification of the Plan.

Except to the extent otherwise provided in a plan or order confirming the plan, the ownership and control of property in the estate returns to the debtor upon confirmation of the plan. 11 U.S.C. § 1327(b). Regardless of the exact parameters of that vesting effect, under the facts of this case, Debtors' plan sufficiently provides otherwise. Section 7 of Debtors' Plan expressly provides that the Wells Fargo Claim "*shall* be treated as a wholly-unsecured, non-priority claim," to be paid along with all other general unsecured claims. To warrant this treatment, the Plan further states that Debtors "*shall*" file a motion to avoid the second trust deed of Wells Fargo. The fact that the Plan required Debtors to pursue a lien avoidance motion was critical to whether Debtors' Plan was confirmable. It paved the way to confirmation by allowing the Trustee to treat Wells Fargo's claim as a general unsecured claim. *See* Trustee Decl. at ¶¶ 9-10. Without it, Debtors would have been required to pay Wells Fargo's claim as fully secured pursuant to § 2(b), and the Plan would not have been confirmed. *Id*. at ¶ 10. Since confirmation,

the Trustee has complied with the terms of Debtors' Plan and has paid Wells Fargo's claim as a general unsecured claim.[6] *Id*. at ¶¶ 9 and 11. Because Debtors' Plan specifically provided for a treatment that was inconsistent with the Property vesting in Debtors, the Plan otherwise provided for the Property and it did not vest in Debtors upon confirmation like the rest of the estate property. *Manion v. Providian National Bank*, 269 B.R. 232, 239 (D. Colo. 2001).

In *Manion*, the debtor's plan stated that the "Debtor shall surrender" certain real property securing the liens of two of her creditors but the surrender was not completed. Following confirmation, the debtor further encumbered the property with three new deeds of trust. The holder of the post-confirmation deeds of trust argued that the property had vested in debtor upon confirmation and, as a result, the debtor had the right to encumber the property despite the surrender provision of the plan. The bankruptcy court, as well as the district court on appeal, disagreed. As explained by the district court, the plan's mandatory surrender provision was sufficient to "otherwise provide" for that property through the plan. The estate, therefore, "retained an interest in the property as necessary to fulfill the Chapter 13 Plan." *Id*. at 240. In short, the court concluded that the real property at issue had not vested in the debtor upon confirmation as the rest of the estate had. *Id*. at 238-40. In just the same way, the mandatory Plan provision requiring Debtors to value and avoid the lien "otherwise provided" for the Property in their Plan. As in *Manion*, Debtors' bankruptcy estate has retained an interest in the Property to the extent necessary to satisfy that mandatory Plan term.

Even if this Court disagrees that Debtors' Plan prevented the Property from vesting in Debtors by "providing otherwise," several courts have determined, more generally, that vesting

---

[6] Notably, the only reason Wells Fargo has received no distribution on the Wells Fargo Claim is that the Plan is a 0% plan. If the Plan had provided that general unsecured creditors were to receive a greater percentage distribution, § 7 of the Plan would obligate the Trustee to make that same distribution with respect to the Wells Fargo Claim. Trustee Decl. at ¶ 11.

BROOKS 11-51864 MEH      OBJ. TO DEBTORS' MOTION TO MODIFY PLAN Page 14 of 17

upon confirmation only returns so much of the estate property to the debtor's control as is not necessary to the fulfillment of the plan. *See, e.g., Heath v. United States Postal Service (In re Heath)*, 115 F.3d 521, 524 (7th Cir. 1997). The Trustee acknowledges that *Heath* is representative of one of several competing approaches to determining whether any estate continues to exist after property vests in the debtor and, if so, what property remains in that post-confirmation estate.[7] While the Ninth Circuit has not explicitly adopted any one of the several approaches, its conclusion in *In re Jones*, 657 F.3d at 928, is consistent with the Seventh Circuit's approach in *Heath*. In *Jones*, the Franchise Tax Board argued that it was prohibited from collecting certain tax debt during the debtor's chapter 13 case thereby tolling a statutory look-back period. Without adopting any specific approach to determining whether and to what extent property of the estate re-vests in a debtor at plan confirmation, the Ninth Circuit acknowledged that *some* estate property must re-vest in the debtor at confirmation, and concluded that Jones "once again became the owner of her property at confirmation, *except as to those sums specifically dedicated to fulfillment of the plan*." *Id.* at 928 (emphasis added).

To date, this Court seems to rely on the estate-termination approach to find that the Property absolutely re-vested in Debtors upon confirmation of their Plan. Although the bankruptcy appellate panel in *Jones* expressly adopted the estate-termination approach, it is significant that the Ninth Circuit chose not to affirm the appellate panel's use of that approach when it had the opportunity to do so. Instead, the Ninth Circuit reached a conclusion more in line with the

---

[7]Under the estate-preservation approach property remains in the estate until the case is closed, dismissed or converted, regardless of confirmation. The conditional-vesting approach gives the debtor an immediate right to use estate property but that right is not final until a discharge is entered. The estate-replenishment approach empties the estate at confirmation but refills it with property acquired post-confirmation. The estate-transformation approach provides that estate property vests in debtor at confirmation, except property essential to the debtor's performance of the plan. Finally, under the estate-termination approach the estate ceases to exist upon confirmation and all property becomes property of the debtor. *See*, Keith M. Lundin & William H. Brown, Chapter 13 Bankruptcy, 4th Edition, §230.1, at ¶ 9, Sec. Rev., May 17, 2011, www.Ch13online.com.

BROOKS 11-51864 MEH      OBJ. TO DEBTORS' MOTION TO MODIFY PLAN Page 15 of 17

estate-transformation approach that keeps property in the estate as needed to carry out the confirmed plan. As discussed above, Debtors' Plan specifically treats the Wells Fargo Claim as a general unsecured claim and requires Debtors to proceed with a motion to avoid Wells Fargo's second deed of trust. Because retention of the Property in the estate is, and was, essential to the fulfillment of those Plan terms, the Ninth Circuit's conclusion in *Jones* dictates that the Property never left the estate.

Finally, the Trustee is aware that this Court has expressed concern, in connection with other cases, that post-confirmation lien strip motions are untimely because § 506(a) of the Bankruptcy Code states that "value shall be determined…in conjunction with any hearing on such disposition or use [of the property] or on a plan affecting such creditor's interest." 11 U.S.C. § 506(a). Relying on *In re McPherson*, 2013 WL 6657599 (D. Colo. Dec. 17, 2013), the Court has indicated its belief that any valuation hearing must be "in conjunction with" the confirmation of the plan. Because Debtor's Plan has already been confirmed, it is no longer possible to hold such a hearing.

The Trustee respectfully submits that *McPherson* is distinguishable from the facts of this case and does not require a finding that a post-confirmation motion to value would be untimely. First, a careful reading of § 506(a) reveals that it does not limit determinations of value to hearings in conjunction with plan *confirmation*. The statute provides that value can be determined in conjunction with "*any* hearing *on a plan* affecting such creditor's interest." The requirement for a hearing "on a plan" is a broader category than "confirmation of a plan." For example, hearings "on a plan" might include hearings to interpret a plan, hearings regarding the implementation of a plan or hearings on the modification of a plan. The broad statutory language of § 506(a) would not preclude this Court from considering a motion to value the Wells

Fargo Claim because there would be a hearing regarding the implementation of the express provisions of Debtors' Plan.

Additionally, *McPherson*, is factually distinguishable from the case at bar. In *McPherson*, the debtors' plan was confirmed without valuing or avoiding a creditor's junior lien and without that determination, the Plan did not treat that creditor as unsecured. In fact, the court noted that there were no significant indications in the McPherson's plan that the parties contemplated modification of the junior lienholder's claim. *Id*. at *6. Here, by contrast, Debtors' Plan expressly provides that Wells Fargo's claim "shall" be treated as wholly unsecured and paid as a general unsecured claim. Any post-confirmation motion to value and avoid Wells Fargo's lien simply implements the express terms of the Plan.

## Conclusion

For the reasons explained, under the specific facts of this case, the Plan modification requested in Debtors' Modification Motion is not necessary to obtain the relief that Debtors seek. Additionally, the requested modification is not authorized under § 1329(a) and there is no evidence that it is otherwise warranted.

WHEREFORE, for each and all of the foregoing reasons, the Trustee asks that the Court deny the Modification Motion.

October 14, 2015 Respectfully submitted,

/s/ *Jane Z. Bohrer*
Attorney for Chapter 13 Trustee